J-A18027-20 & J-A18028-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| IN THE INTEREST OF E.S., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: A.L. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 301 WDA 2020 |

Appeal from the Order Entered February 5, 2020
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s):  CP-02-AP-0000168-2019

| | | |
|---|---|---|
| IN THE INTEREST OF: E.S., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: Z.S. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 322 WDA 2020 |

Appeal from the Order Entered February 3, 2020
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s):  CP-02-AP-0000168-2019

BEFORE:  BENDER, P.J.E., DUBOW, J., and NICHOLS, J.

MEMORANDUM BY DUBOW, J.:                        FILED JULY 16, 2020

In these appeals, Z.S. ("Father") and A.L. ("Mother") challenge the

Orders entered by the Court of Common Pleas of Allegheny County Orphans'

Court, dated February 3, 2020, and entered on February 5, 2020, involuntarily

terminating their parental rights to their daughter, E.S., born in September

2017 ("Child").[1]   Because the record supports the decision of the orphans' court, we affirm the Orders.

SUMMARY OF FACTS AND PROCEDURAL HISTORY

    We glean the following factual and procedural history from the orphans' court's opinion, which is supported by the certified record.   Orphans' Court Opinion, 4/6/20, at 4-11.  On November 20, 2017, Child's pediatrician noticed bruising on Child's face during a routine examination and directed Mother and Father, who are Child's primary caregivers, to take Child to the emergency room. At Children's Hospital of Pittsburgh ("CHP"), hospital staff discovered that, in addition to facial bruising, then two-month-old Child had four fractured ribs in various stages of healing.   Mother and Father could not provide a plausible explanation for Child's injuries.   Accordingly, the Allegheny County Office of Children, Youth, and Families ("CYF") obtained emergency protective custody of Child.

    CYF filed a dependency petition and, at the adjudication hearing on December 21, 2017,[2] Mother and Father stipulated to the testimony of Dr. Jennifer Wolford, CHP physician, namely, that Child's facial bruising was caused by direct trauma, not a pacifier as Mother and Father claimed.  Mother and Father further stipulated that Child's multiple rib fractures had been

_____

[1] On March 5, 2020, this Court ordered, sua sponte, that the appeals be listed consecutively.

[2] The court appointed KidsVoice to be Child's guardian ad litem.

healing for three to four weeks, were caused by squeezing, and would have caused substantial pain. Child was adjudicated dependent.

At the conclusion of the hearing, the Commonwealth arrested Mother and Father and charged them both with Endangering the Welfare of Children ("EWOC").[3] Ultimately they both pleaded guilty to EWOC. The court sentenced them each to three years' probation, and ordered them to take a parenting class.

The dependency court developed a Permanent Placement Plan ("Plan") with a goal of reunification. Mother's and Father's objectives, essentially identical, included: completing a non-offenders' parenting class; continuing visits with Child; cooperating with the criminal process and alleviating any criminal restrictions; working with in-home services and completing a coached parenting program; completing budgeting and independent living programs; obtaining appropriate housing; and undergoing a mental health evaluation and attending treatment as needed. Notes of Testimony ("N.T."), 2/3/20, at 42-45.

On May 29, 2018, September 11, 2018, and December 4, 2018, the court held permanency review hearings. At each hearing, the court found both parents in substantial compliance with the Plan, and having made moderate progress towards alleviating the circumstances necessitating the placement. The placement goal remained reunification after each hearing.

_____

[3] 18 Pa.C.S. § 4304.

On March 6, 2019, the court held a permanency review hearing and again found Mother and Father had made moderate progress and were in substantial compliance with the Plan. The court noted that Parents had participated in supervised visits with Child three times a week and the overseeing agency had reported no concerns. However, the court entered a finding of aggravated circumstances against Mother and Father because Mother testified that she still believed that Child's pacifier caused her facial bruising and both parents continued to deny abusing Child despite their guilty pleas to EWOC. The court, nonetheless, kept the reunification goal and ordered that reasonable efforts to reunify continue.

On June 12, 2019, the court held a permanency review hearing and again found Mother and Father were in substantial compliance with the Plan and had made moderate progress. At that time, the court expanded Mother's and Father's visitation to three overnights per week, unsupervised. Child's permanency goal remained reunification.

On July 6, 2019, following an unsupervised visit with her parents, Child returned to her foster home with bruising around her ear. Foster Parents took Child to an urgent care center and then to the emergency room at CHP. Mother and Father claimed that Child had fallen out of her toddler bed. However, Dr. Adelaide Eichman, a CHP physician, opined that the bruising was suspicious for abuse and not consistent with a short fall.

On September 4, 2019, the court held a permanency review hearing and again found that Mother and Father were in substantial compliance with the

Plan, and had made moderate progress towards reunification. However, the court found Mother's and Father's explanations for Child's new injuries suspicious. Although Mother and Father had completed classes through Arsenal and Family Resources, the court ordered CYF to determine if there were additional parenting classes that might be appropriate for them.

On that same date, CYF filed petitions to involuntarily terminate Mother's and Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(2), (5), (8), and (b). Child was then two years old and had been in foster care all but two months of her life. The court appointed the Office of Conflict Counsel to represent Child's legal interests.

The court held a permanency review hearing on November 13, 2019, and again found Mother and Father in substantial compliance with the Plan, and having made moderate progress towards reunification. At that time, Child's permanency goal remained reunification.

However, following a weekend visit with Mother and Father from January 3, 2020, to January 6, 2020, Child again returned to her foster home with facial bruising. Foster parents took her to CHP, where she was examined by Dr. Eichman. Parents claimed that Child was hit in the face with a basketball. However, Dr. Eichman testified that, in her opinion, Child's injury was consistent with impact trauma inflicted by a hand. Dr. Eichman expressed concerns that Child continued to be injured and abused, and that her head was a consistent target. Father was again charged with EWOC and aggravated assault in connection with Child's injuries.

- 5 -

The orphans' court conducted a hearing on the TPR petition on February 3, 2020, when Child was 28 months old.[4] Mother and Father were represented by separate counsel. CYF presented the testimony of Kathy Gary, Mother's and Father's probation officer; Dr. Adelaide Eichman, CHP physician; Erin Burzynski, CYF caseworker; and Dr. Terry O'Hara, a forensic psychologist who performed evaluations of both Mother and Father. Mother testified on her own behalf and presented the testimony of Anjel Gilliam, the Holy Family Institute in-home family counselor. Father testified on his own behalf.[5] Attorney Spurr presented the testimony of Shelva Ulery, foster care specialist with the Bair Foundation.[6]

On February 5, 2020, the orphans' court entered Orders involuntarily terminating Mother's and Father's parental rights to Child pursuant to 23 Pa.C.S. § 2511(a)(2), (5), (8), and (b). Thereafter, Mother and Father timely filed Notices of Appeal and Concise Statements of Errors Complained of on Appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

_____

[4] At the hearing, Attorney Andrea Spurr represented Child's legal interests. KidsVoice remained guardian ad litem, although no representative from KidsVoice appeared at the hearing.

[5] Father was incarcerated at the time of the hearing in connection with an unrelated case.

[6] At the conclusion of the hearing, Attorney Spurr noted that she had spoken with Child and that Child did not understand the concept of adoption, termination of parental rights, or a "forever home." N.T., 2/3/20, at 192-93. Attorney Spurr argued in favor of the involuntary termination of Mother's and Father's parental rights. Id. at 192-94. In this Court, she has filed a brief in support of the orphans' court's decision. Appellee's Brief at 12-22.

ISSUES ON APPEAL

Mother raises the following issues for our review:

1. Did the trial court abuse its discretion and/or err as a matter of law in granting the petition to involuntarily terminate Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(2), (5), and (8)?

2. Did the trial court abuse its discretion and/or err as a matter of law in concluding that CYF met its burden of proving by clear and convincing evidence that termination of Mother's parental rights would best serve the needs and welfare of [Child] pursuant to 23 Pa.C.S. § 2511(b)?

Mother's Brief at 6.

Father raises the following issues for our review:

1. Did the trial court abuse its discretion and/or err as a matter of law in granting the petition to involuntarily terminate Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(2)?

2. Did the trial court abuse its discretion and/or err as a matter of law in granting the petition to involuntarily terminate Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(5), and (8)?

3. Did the trial court abuse its discretion and/or err as a matter of law in concluding that CYF met its burden of proving by clear and convincing evidence that termination of Father's parental rights would best serve the needs and welfare of [Child] pursuant to 23 Pa.C.S. § 2511(b)?

Father's Brief at 6-7 (answers omitted).

LEGAL ANALYSIS

In reviewing cases in which the orphans' court involuntarily terminated parental rights, appellate courts must accept the findings of fact and credibility determinations of the orphans' court if the record supports them. In re T.S.M., 71 A.3d 251, 267 (Pa. 2013). If the record supports the factual findings, appellate courts then determine if the orphans' court made an error

- 7 -

of law or abused its discretion. Id. Where the competent record evidence supports the court's findings, we must affirm the orphans' court decree even though the record could support an opposite result. In re Adoption of Atencio, 650 A.2d 1064, 1066 (Pa. 1994).

"The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." In re M.G., 855 A.2d 68, 73–74 (Pa. Super. 2004) (citations omitted). Appellate courts defer to the orphans' court that often has "first-hand observations of the parties spanning multiple hearings." In re T.S.M., supra at 267 (citations and quotation marks omitted). Importantly, "[t]he court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future. Indeed, we work under statutory and case law that contemplates only a short period of time . . . in which to complete the process of either reunification or adoption for a child who has been placed in foster care." In re Adoption of R.J.S., 901 A.2d 502, 513 (Pa. Super. 2006) (emphasis in original; citations omitted).

In addressing petitions to terminate parental rights involuntarily, the Adoption Act requires the court to conduct a bifurcated analysis. See 23 Pa.C.S. § 2511(a) and (b). The court first focuses on the conduct of the parent, and, if the party seeking termination presents clear and convincing evidence that the parent's conduct meets one of the grounds for termination set forth in Section 2511(a), then the court will analyze whether termination of parental rights will meet the needs and welfare of the child, i.e., the best interests of the child, as provided in Section 2511(b). The courts must

examine the existence of the child's bond with the parent, if any, and the potential effect on the child of severing such bond. In re L.M., 923 A.2d 505, 511 (Pa. Super. 2007). A parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his parental duties, to the child's right to have proper parenting and fulfillment of the child's potential in a permanent, healthy, safe environment. In re B.N.M., 856 A.2d 847, 856 (Pa. Super. 2004) (internal citations omitted).

While the orphans' court here found that CYF met its burden of proof under 23 Pa.C.S. § 2511(a)(2), (5), (8) and (b) with regard to Mother and Father, we need only agree with its decision as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm the termination of parental rights. See In re B.L.W., 843 A.2d 380, 384 (Pa. Super. 2004) (en banc). Here, we will focus our analysis on Section 2511(a)(2) and (b), which provide as follows:

§ 2511. Grounds for involuntary termination

(a) General rule.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\* \* \*

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

(b) Other considerations.--The court in terminating the rights of a parent shall give primary consideration to the developmental,

physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2) and (b).

Termination Pursuant to Section 2511(a)(2)

We first conclude that the court properly exercised its discretion by terminating Mother's and Father's parental rights pursuant to Section 2511(a)(2). Section 2511(a)(2) provides for termination of parental rights where the petitioner demonstrates by clear and convincing evidence that "[t]he repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent." 23 Pa.C.S. § 2511(a)(2); In re Adoption of S.P., 47 A.3d 817, 827 (Pa. 2012) (citations omitted). The grounds for termination of parental rights under Section 2511(a)(2) due to parental incapacity are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties. In re A.L.D., 797 A.2d 326, 337 (Pa. Super. 2002). This Court has long recognized that a parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. Id.

Mother's Appeal

Mother contends that that there was insufficient evidence to support the conclusion that the conditions leading to the removal of Child cannot be remedied by Mother within a reasonable amount of time. Mother's Brief at 31. Mother argues that the doctor's diagnoses of Child's injuries as indicative of child abuse were subjective and unreliable, particularly where Mother could not provide a plausible explanation to the doctor for injuries she did not cause or witness. Id. at 32.

In its opinion, the orphans' court concluded that Child had spent twenty-six consecutive months in foster care, and that Mother was unable to make the necessary progress and acknowledgement of her parental deficiencies to remedy the conditions leading to Child's removal. Orphans' Court Opinion, 4/6/20, at 12. The court noted that, although Mother had cooperated with and completed many of her Plan objectives, she still could not demonstrate that she could keep Child safe from intentionally inflicted injuries that amounted to child abuse. Id. at 13-17. Specifically, the court noted unrefuted evidence that, during unsupervised visitation with parents, there were two additional injuries that occurred to Child in July 2019 and January 2020. Id. Expert testimony and medical records supported that the distinct, parallel linear bruising on Child's left cheek and temple in January 2020 did not match Mother's and Father's explanations for the injury, and were

indicative of child abuse.[7]  Id. at 17.  Additionally, Mother entered a guilty plea to EWOC based on the injuries which had caused Child's removal, despite her continued insistence at later proceedings that she had not injured Child. Id. at 18.  Finally, the court concluded that there was no competent evidence or testimony that Mother "can or will be able to soon demonstrate, with any degree of confidence, an independent ability to ensure this child's long-term safety."  Id. at 17-18.

Thus, the court concluded that Child lacked essential parental care, and that Mother's inability to ensure Child's safety was the source of her repeated and continued parental incapacity.  Id.

Having reviewed the record, we conclude that it supports the findings of the orphans' court that Mother has not provided Child with the essential parental care, control and subsistence necessary for Child's mental and physical well-being, and that Mother is unable to remedy the causes of her parental incapacity, neglect or refusal any time in the foreseeable future. Thus, Mother is not entitled to relief.

Father's Appeal

Father contends that the orphans' court erred when it determined that CYF had met its burden and proved that Child was without essential parental care and control, and that repeated and continued incapacity, abuse, neglect, or refusal existed.  Father's Brief at 19.   Father argues that his completion of

_____

[7] Dr. Eichman testified that she found the parents' explanation for the July 2019 injuries unlikely because a child falling from a toddler bed "would not be expected to cause really any injury, but particularly not ear bruising or scalp petechia."  N.T., 2/3/20, at 19.

all of the services ordered for him, as well as his court-ordered goals, displays competent evidence that he can ensure Child's long-term safety. Id. at 21-22.

The orphans' court's analysis regarding Father's claims mirrors its analysis of Mother's claims. Specifically, the court noted that Child had spent the majority of her life in care and that Father had not made the necessary progress to remedy the conditions leading to Child's removal. Orphans' Court Opinion, 4/6/20, at 12. Although Father had completed many of his Plan objectives and services, the court emphasized that Child was still injured twice during unsupervised visitation with her parents, and testimony and evidence supported the conclusion that the injuries were indicative of Child abuse. Id. at 13-17. Further, although Father had entered a guilty plea to EWOC, he continued to deny having injured Child, and offered implausible explanations for Child's July 2019 and January 2020 injuries. Id. Finally, the court concluded that there was no competent evidence or testimony that Father "can or will be able to soon demonstrate, with any degree of confidence, an independent ability to ensure this child's long-term safety." Id. at 17-18.

Having reviewed the record, we conclude that it supports the findings of the orphans' court that Father has not provided Child with the essential parental care, control and subsistence necessary for Child's mental and physical well-being, and that Father is unable to remedy the causes of his parental incapacity, neglect or refusal any time in the foreseeable future. Thus, Father is not entitled to relief.

Termination Pursuant to 2511(b)

With respect to Section 2511(b), we consider whether termination of parental rights will best serve Child's developmental, physical, and emotional needs and welfare. See In re Z.P., 994 A.2d 1108, 1121 (Pa. Super. 2010). "In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." Id. "[A] parent's basic constitutional right to the custody and rearing of . . . her child is converted, upon the failure to fulfill . . . her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." In re B.,N.M., 856 A.2d 847, 856 (Pa. Super. 2004) (internal citations omitted).

It is sufficient for the orphans' court to rely on the opinions of social workers and caseworkers when evaluating the impact that termination of parental rights will have on a child. In re Z.P., supra at 1121. The trial court may consider intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. See In re N.A.M., 33 A.3d 95, 103 (Pa. Super. 2011). Ultimately, the concern is the needs and welfare of a child. In re Z.P., supra at 1121.

The orphans' court may equally emphasize the safety needs of the child and may consider intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. In re N.A.M., 33 A.3d at 103. Where there is no evidence of a bond between the parent and child, it is

- 14 -

reasonable to infer that no bond exists. See In re K.Z.S., 946 A.2d 753, 763 (Pa. Super. 2008). Where there is evidence of a bond, the court must determine whether the child's welfare and safety outweighs any benefits provided by that bond. See In re Z.P., 994 A.2d at 1121.

Mother's Appeal

Mother contends that the court erred in concluding that CYF met its burden under Section 2511(b), because the testimony supports the contention that Child loves and is bonded with Mother. Mother's Brief at 36-37. Mother additionally argues that there is no expert opinion supporting a determination that termination of Mother's parental rights best serves the needs and welfare of Child. Id. at 37.

The orphans' court relied on the testimony of CYS caseworker Burzynski, Bair Foundation caseworker Ulery, and Dr. O'Hara. Orphans' Court Opinion, 4/6/20, at 20-22. Ms. Burzynski testified that Child referred to both parents as mom and dad, and did not seem uncomfortable in their care; however, Child also referred to her foster parents as mom and dad and was unphased with lapses in visit with Mother and Father. Id. at 20. Ms. Burzynski testified that Child was in care for all but two months of her life, and that, on unsupervised visitations, sustained injuries consistent with child abuse. Id. Ms. Burzynski testified that it was in Child's best interests for parents' rights to be terminated. Id. Ms. Ulery testified that Child loves and adores her foster brothers and views her foster parents as her parents. Id. at 20-21. Dr. O'Hara observed an interactional between Mother and Child, and Child showed some signs of attachment to Mother. Id. at 21. Mother praised Child, showed affection, was interactively playful, and could gain Child's compliance. Id.

However, foster mother also showed positive parenting skills, and Child interacted very well with foster mother. Id. [8] Dr. O'Hara's opinion was that the foster home was an appropriate potential adoptive resource. Id.

The court concluded that severing Child's bond with Mother would "not cause extreme emotional consequences . . . and any negative consequences would be mitigated by the strong, healthy and secure bond that [Child] had established with the foster family that she had resided [with] for the last twenty months." Id. at 22. The termination would be able to provide Child with the stability and permanence needed at her young age. Id.

Further, the court may consider the safety needs of a child and prioritize those needs over the existence of a parental bond. In re N.A.M., 33 A.3d at 103. Here, the safety needs of Child were implicated, as she suffered two additional injuries diagnostic of child abuse while in the unsupervised custody of Mother. Although there was affection between Mother and Child, Child's need for safety, permanency, and stability outweighed the need to keep that bond. Id.

Thus, the record confirms that the orphans' court properly determined that terminating Mother's parental rights would best serve Child's needs and welfare. While Child had a relationship with Mother, their relationship is not one that is necessary and beneficial. See In re Z.P., 994 A.2d at 1121.

Father's Appeal

Father contends that the orphans' court erred in finding that CYF met its burden under Section 2511(b), because there was clearly a bond of love

_____

[8] Dr. O'Hara did not observe Child interacting with Father as he was in the military and deployed overseas at the time. Ms. Ulery testified that Child and foster father communicate regularly over Facetime.

and affection between Child and Father. Father's Brief at 24-27. Father contends that the orphans' court focused, in error, on the testimony of Dr. O'Hara regarding Child's ability to better weather the stress of termination due to her bond with foster mother. Id. at 26.

The orphans' court's analysis of the evidence presented at the hearing was identical to the analysis with regard to Mother. Specifically, the testimony of Ms. Burzsynski, Ms. Ulery, and Dr. O'Hara that Child was comfortable and affectionate with Father, but also comfortable and affectionate with her foster mother, and that the foster home was an appropriate adoptive resource. Orphans' Court Opinion, 4/6/20, supra. In contrast, Father's argument focuses on his bond with Child and contends that the trial court focused solely on Dr. O'Hara's testimony that Child would be better equipped to handle the stress of termination due to her bond with foster mother.

Our review indicates that the court appropriately considered the bond between foster mother and Child as provided in Dr. O'Hara's testimony and established case law. Here, when asked whether there would be a detriment to Child if Father's rights were terminated, Dr. O'Hara answered in the affirmative, but noted that Child's bond with the foster mother would alleviate some of that stress. N.T., 2/3/20, at 93-94.

Father's argument is unpersuasive and discounts the fact that the court may focus on safety concerns regarding the Child in addition to the bonds the Child may or may not have with parents or foster parents. In re N.A.M., 33 A.3d at 103. See also In re: T.S.M., 71 A.3d at 267 (observing that "courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents."). In

the instant case, the court weighed the positive interactions between Father and Child against the injuries that occurred repeatedly while Child was in Father's care.  Orphans' Court Opinion, 4/6/20, supra.  Here, the record supports the contention that, despite the bond between Father and Child, safety concerns and Child's need for permanency outweighed any positive value from that bond.  In re N.A.M., 33 A.3d at 103.

Our review of the record supports the orphans' court's determination and we discern no abuse of discretion or error of law.  We, thus, affirm the court's determination that involuntary termination of Mother's and Father's parental rights is in the best interests of Child.  Therefore, we affirm the orphans' court's February 5, 2020, Orders.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  7/16/2020